IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES CHRISTOPHER CHARLTON,                 ) | |
| Petitioner,                ) | Civil Action No. 07-200 Erie |
| ) | |
| v.                ) | Magistrate Judge Baxter |
| ) | |
| DAVID WAKEFIELD, et al.,                ) | |
| Respondents.                ) | |

**OPINION AND ORDER**[1]

**I.      Introduction**

In January 2004, Petitioner James Christopher Charlton was tried in the Court of Common Pleas of Erie County for the April 1991 murder of Rebecca Bain. It was the second time the Commonwealth tried him for Bain's murder. His first trial ended in October 2003 in a mistrial with a hung jury. On January 12, 2004, the jury empaneled for his second trial found him guilty of first-degree murder. The trial court subsequently sentenced him to the mandatory term of life in prison without parole.

Pending before this Court is a Petition For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Document No. 7], in which Petitioner raises the following three claims: (1) his Fourth Amendment rights were violated because the police seized several items that were later admitted at trial, including a pair of bloodstained jeans, pursuant to an illegal search; (2) his constitutional right to an impartial jury was violated due to minorities being under-represented on the jury array; and (3) his verdict was against the weight of the evidence.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment. (Document Nos. 8 & 17). Mary Friedline, Esq., who entered her appearance on behalf of the Warden and the Attorney General's Office, notified the Court that the District Attorney of Erie County would submit the Answer on behalf of the Respondents. (Document No. 13).

**II.    Relevant Background**

On April 14, 1991, Bain's dead body was discovered in her apartment. She way lying on her back in a pool of blood. (1/6/04 Trial Tr. at 36).[2] Dr. Adbuaas Shakir, the forensic pathologist who performed the autopsy, testified at Petitioner's subsequent trial that Bain died of asphyxiation due to compression of her neck. (10/1/03[3] Trial Tr. at 175). He explained that "could mean strangulation, could mean any of [sic] any way in which there's a compression of the neck which results in preventing her from breathing and preventing oxygen into the blood from going to the brain." (Id. at 176). Dr. Shakir also found deep incised wounds of the vaginal area and several "superficial incised wounds [were] seen radially oriented around the anus." (Id. at 182-83). He opined that these wounds were inflicted either after death or shortly before death when Bain was in a state of shock, as determined from the lack of evidence of struggle. (Id. at 185, 191). There were also several other findings of trauma, including bruises on the neck, chest, clavicle, and both thighs. (Id. at 183-84).

It was estimated that Bain was killed on Saturday, April 13 or Sunday, April 14, 1991. The police interviewed several individuals that they believed had been at Bain's apartment on those dates. Petitioner was among those interviewed and police suspected that he murdered Bain during an attempted robbery. The Commonwealth initially was unable to gather sufficient evidence to proceed to trial against him, however. It first charged him with Bain's murder in September 1992, but withdrew the charge. It charged him again in 1993, only to withdraw the

---

[2] Respondents have submitted most of the relevant transcripts and most of the original State Court Record ("SCR"). The SCR contains 89 documents and shall be cited to as "SCR No. __ ." A few state court records are not contained in the indexed portion of the SCR. Those documents are appellate briefs and more recent filings made in the Court of Common Pleas of Erie County and are located in the same hard-copy file that contains the indexed SCR and the transcripts.

[3] Dr. Shakir was qualified as an expert witness and testified as to the cause of Bain's death. Dr. Shakir could not be present at Petitioner's second trial due to a severe snowstorm. The parties stipulated that his testimony from the first trial be read into the record at the second trial. (1/7/04 Trial Tr. at 27 (citing 10/1/03 Trial Tr. at 171-195)). The trial transcript for October 1, 2003, is not contained among the records Respondents submitted to this Court. The trial court set forth Dr. Shakir's testimony in an opinion (SCR No. 80) and this Court has relied upon that summarization, which is uncontested.

charge for the second time.

Approximately eleven years after Bain's murder, the results of new and more advanced DNA testing on the bloodstained jeans linked Petitioner to the murder. Additionally, Amy Pencille, who in 1993 had pleaded guilty to second-degree murder for her role in the killing of Bain, gave investigators a statement implicating Petitioner. In June 2002, armed with the new evidence to support its case, the Commonwealth filed a third criminal complaint charging Petitioner with Bain's murder. The trial court appointed James Pitonyak, Esq., and Anthony Logue, Esq., to represent him. The Commonwealth notified the defense that it would be seeking the death penalty.

Petitioner filed an omnibus pretrial motion that included a motion to suppress several of the items that the police had seized, including the bloodstained jeans, on the basis that the items had been obtained pursuant to an illegal search. (SCR Nos. 10, 24-25). A suppression hearing was held on February 4, 2003. (See Suppression Hr'g Tr.). On February 26, 2003, the trial court issued an Order denying the motion to suppress. (SCR No. 26).

Prior to a pretrial conference on August 14, 2003, Petitioner's counsel filed a motion to stay, for discovery regarding jury selection, and to dismiss the array of jurors (8/14/03 Pretrial Conf. Tr. at 13-20). It was alleged that the jury selection system in Erie County systematically under-represented and discriminated against minority citizens. Peter Freed, the deputy court administrator, testified at the pretrial conference and explained how the jury source lists and arrays are composed. (Id. at 16-18). At the end of the pretrial conference, the trial court denied Petitioner's motion, holding "there is nothing that points to the process as being unfair. The process is constitutional. It is fair.... We will look at the array when the array comes in, then we will deal with any other issues, like Batson [v. Kentucky, 476 U.S. 79 (1986)][4] as they come

---

[4] In Batson, the Supreme Court, *inter alia*, reaffirmed the principle that "the defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race, or on the false assumption that members of his race as a group are not qualified to serve as jurors." 476 U.S. at 84 (internal citations and quotations omitted).

up[.]"  (Id. at 21).  It does not appear that defense counsel raised the issue again during the jury selection process conducted on September 29 and 30, 2003.

On October 6, 2003, the jury announced that it was deadlocked and a mistrial was declared.  Thereafter, the Commonwealth withdrew its intent to seek the death penalty.  Petitioner's second trial commenced on January 5, 2004, with the selection of a new jury.  Defense counsel did not raise a challenge to the jury array.

At trial, the Commonwealth contended that one factor that proved Petitioner's guilt was that Bain's blood was on his jeans.  Through several witnesses and exhibits, it established that during the investigation of Bain's homicide detectives from the Erie County Police Department discovered several bags and boxes containing Petitioner's personal items.  Among the items seized were the jeans stained with blood that was later determined through DNA testing to be Bain's blood.  To prove that the bloodstained jeans belonged to Petitioner, the Commonwealth called Wayne Harbison, who testified that he and Petitioner had made arrangements for Petitioner to move into his apartment.  (1/8/04 Trial Tr. at 132-34).  Harbison stated that Petitioner had moved "a few bags [and] a few boxes" into the apartment.  Later, Harbison decided that he did not want Petitioner to move in with him and so he asked him to move his belongings out, which Petitioner failed to do.  (Id. at 134).  Subsequently, the police contacted Harbison as part of the Bain murder investigation.  In the course of Harbison's conversation with the police, he reported that Petitioner's belongings were still in his apartment.  On May 1, 1991, at Harbison's request, the police accompanied Harbison to his apartment.  At that point, the police discovered the items left there by Petitioner, including the pair of bloodstained jeans.  (Id. at 136-37).

To further establish that the jeans belonged to Petitioner, the Commonwealth introduced photographs of Harbison's apartment, the actual items seized from the apartment, and testimony from the police investigators indicating that there were several identifying items of Petitioner's personal property found in the bags and boxes seized.  (Id. at 27-28, 174-85).  Detective James D. Washburn stated that he tagged the items of Petitioner's personal property found in boxes seized from the apartment and brought them back to the police station.  He identified several items

found in the bags and boxes seized, including: papers with Petitioner's name and different addresses; an address book containing the business card of Detective Kuhn, who had given Petitioner that card earlier in the course of the investigation; and two prescriptions from a Rite Aid pharmacy both prescribed with Petitioner's name on the label. (Id. at 180-86).

The Commonwealth then offered expert testimony and reports to establish that the blood on Petitioner's jeans was Bain's blood. Dr. Jason Kokoszka, a molecular geneticist with a Ph.D. in genetics and molecular biology, was qualified as an expert witness for the Commonwealth. (Id. at 77-80). He testified that the jeans were stained with the blood from more than one person, and explained that:

> [S]ometimes when you have a mixture, you have one component of that mixture which is present in much, much higher amounts than the other components. And that was the situation here. When you have a component present in higher amounts, your about to call that [sic] what is called a "primary profile" or a "major contributor." We were able to do that, and we identified a female profile as a major contributor. And that profile happened to match the profile we obtained from M. Bain.
>
> And we also detected what's called "secondary types" or "minor types" present in much, much lower amounts. And [Petitioner] could not be excluded as being a possible source of those minor types.

(Id. at 88). Dr. Kokoszka further explained that to say someone "could not be excluded" was different than finding that someone was a match, as it was much less of a statistical certainty. The DNA sample, from which Petitioner could not be excluded, would be present in about 1 in every 300 unrelated African-Americans. (Id. at 90-94, 101). Finally, Dr. Kokoszka testified that Harbison could be excluded as a whole from being a contributor to the DNA sample taken from the bloodstained jeans. (Id. at 93-94).

In addition to the physical and scientific evidence linking Petitioner to Bain's murder, the Commonwealth also offered the testimony of Amy Pencille.[5] She testified that she and Petitioner

---

[5] Pencille pleaded guilty in 1993 to second-degree murder and criminal conspiracy for her role in the death of Bain. She was sentenced to life in prison without parole. For years, she did not provide the police with a statement sufficient to proceed with charges against Petitioner. However, in 2002, Pencille told investigators that she was in the apartment when Petitioner killed Bain. Her statement, along with the results of new DNA testing that had been conducted on the bloodstained jeans, prompted the Commonwealth to pursue its case again Petitioner after so many

(continued...)

went to Bain's apartment to collect money from her. (1/7/04 Trial Tr. at 91). According to Pencille, Bain voluntarily allowed them into her apartment. Then, Bain and Petitioner walked into the bedroom. Pencille said that she remained in the living room for about twenty-five minutes. When Petitioner came out of the bedroom, Pencille testified, he had blood on his pants. He then "grabbed [Pencille] by the hair and threw [her] in the bedroom" where Pencille saw Bain's dead body. (Id. at 96).

On January 12, 2004, the jury convicted Petitioner of first-degree murder. On February 17, 2004, the trial court sentenced him to life in prison without parole. Petitioner filed a post-trial motion in which he claimed, in relevant part, that the court had erred in denying the motion to suppress and for not holding a full hearing on the motion he filed prior to his *first trial* challenging the jury array. Petitioner also challenged both the weight and the sufficiency of the evidence presented against him. (SCR No. 68). The trial court denied the post-trial motion. (SCR No. 69). Petitioner next filed his Statement Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). (SCR No. 78). On June 9, 2004, the trial court issued a twenty-three page Rule 1925 Opinion. (SCR No. 80, Commonwealth v. Charlton, No. 1751 of 2002, slip op. (C.P. Erie June 9, 2004) ("Rule 1925 Opinion")).

Next, Petitioner's counsel was permitted to withdraw and Assistant Public Defender Joseph Paul Burt, Esq., entered his appearance before the Superior Court of Pennsylvania. (SCR No. 81). On or around September 9, 2004, Petitioner, through Burt, filed his *Brief For Appellant*, No. 476 WDA 2004 (Pa. Super. Sept. 8, 2004). In that brief, Petitioner raised all of the claims discussed above *except* for the claim that there was insufficient evidence to support the verdict. (He limited his challenge to the jury's verdict by asserting only that it was against the weight of the evidence).

---

[5](...continued)
years. The defense vigorously attacked Pencille's credibility. The Commonwealth countered that she had matured and changed after spending the last decade in prison and that, although she had lied in the past, her trial testimony was credible. In his closing argument, the prosecutor reminded the jury that Pencille would spend the rest of her life in prison and that the Commonwealth had made no deal with her in exchange for her testimony. (1/9/04 Trial Tr. at 63; see also 1/7/04 Trial Tr. at 87).

On November 9, 2005, the Superior Court issued a Memorandum Opinion denying Petitioner's direct appeal. (SCR No. 84, Commonwealth v. Charlton, No. 476 WDA 2004, slip op. (Pa.Super. Nov. 9, 2005)). It denied the Fourth Amendment suppression claim and the weight of the evidence claim on the merits. (Id. at 5-17). The Superior Court held that Petitioner's claim challenging the racial composition of the jury array was waived because he did not raise it prior to his second trial. (Id. at 17-19 (citing Pa.R.Crim.P. 630(B);[6] Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Commonwealth v. Dennis, 695 A.2d 409, 411 (Pa. 1997) (if appellate courts were to consider issues not raised in the trial court, then the trial would be a mere dress rehearsal)). See also 42 PA.CONS.STAT.ANN. § 4526(b)-(f).

On June 14, 2006, the Supreme Court of Pennsylvania denied a petition for allowance of appeal. (SCR No. 83). Next, on November 6, 2006, Charlton filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A.. § 9541, *et seq.* (SCR No. 85). In his PCRA motion, Petitioner once again challenged the denial of the suppression motion, the sufficiency and/or the weight of the evidence, as well as the composition of the jury array. (Id.)

The PCRA Court appointed William J. Hathaway, Esq., to represent Petitioner. On December 6, 2006, Hathaway submitted a "no merit" letter and a request for leave to withdraw. (See attachment to SCR No. 88). On January 11, 2007, the PCRA Court issued a notice informing Petitioner that it intended to grant Hathaway's request to withdraw and to deny his PCRA motion, and that he had twenty days to file objections. (SCR No. 88). Petitioner did not

---

[6] Rule 630 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part:
   **(B) Challenge to the Array.**
      (1) Unless opportunity did not exist prior thereto, a challenge to the array shall be made not later than 5 days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge.
      (2) A challenge to the array may be made only on the ground that the jurors were not selected, drawn, or summoned substantially in accordance with law.

file objections. On February 6, 2007, the PCRA Court issued a nine-page Opinion and Order denying PCRA relief and notifying Petitioner that he had thirty days to file an appeal. (SCR No. 89, Commonwealth v. Charlton, No. 1751 of 2002, slip op. (C.P. Erie, Feb. 6, 2007)). Petitioner did not file an appeal to the Superior Court.

Next, Charlton filed in this Court his *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the meantime, he continued to seek relief before the Court of Common Pleas. On November 5, 2008, he filed a second *pro se* PCRA motion in which he claimed that he was innocent and that Amy Pencille had admitted to a woman named Kate Slater that her trial testimony was false. He acknowledged that he had been unable to locate Slater in order for her to sign an affidavit to support his claim that Pencille had recanted her trial testimony. (*Second PCRA Motion* at 3-5).

On February 10, 2009, the PCRA Court issued an Opinion and Order dismissing the second PCRA motion. (Commonwealth v. Charlton, No. 1751 of 2002, slip op. (C.P. Erie Feb. 10, 2009)). It held that the second PCRA motion was "patently untimely" under the applicable statute of limitations, 42 Pa.C.S.A. § 9545(b), and therefore it did not have jurisdiction to rule on the merits. (Id. at 2-4). The PCRA Court further held:

> However, assuming *arguendo* the instant PCRA Petition is properly before this Court, Defendant has failed to state any grounds for which relief may be granted. In this instant PCRA Petition, Defendant's sole contention is that his Co-Defendant, Amy Pencille, told Kate Slater while confined at SCI Muncy that she did not meet Defendant until April 16, 1991, after the body of Defendant's victim was found. If Defendant's contention is true, then Amy Pencille's testimony at Defendant's trial would be false because Ms. Pencille testified she was with Defendant when he killed the victim in the victim's apartment. See (N.T. 1/7/2004, Jury Trial – day 2, pp. 92-98). However, Defendant has not stated how this new information, if proved, would actually prove his innocence.
>
> Additionally, Defendant admits in the instant PCRA that he has been unable to locate Ms. Slater; and therefore, Defendant cannot prove his contention even if this Court had a hearing on the merits of the instant PCRA Petition. Moreover, at Defendant's trial, Ms. Pencille testified that she previously told police she had not met Defendant until April 16, 1991, after the victim's body had been found. (N.T. 1/7/2004, Jury Trial– day 2, pp. 98-101). At Defendant's trial, Ms. Pencille credibly stated that she had previously lied about not meeting Defendant because he threatened to kill her mother and her son. (N.T. 1/7/2004, Jury Trial – day 2, pp. 97-101). Thus, Defendant's contention that Ms. Pencille did not meet him until April 16, 1991 is not new at all, and was indeed raised

> at Defendant's trial. Moreover, the only person who could prove Defendant's contention that Ms. Pencille did not meet Defendant until April 16, 1991 is Ms. Pencille[ ] herself, who Defendant has not offered to testify. Defendant admits he cannot locate his witness, Kate Slater; and therefore, Defendant would have no evidence to present at a hearing.

(Id. at 4-5).

Petitioner filed a *pro se* appeal to the Superior Court. On September 3, 2009, the Superior Court issued a *per curiam* Order dismissing the appeal for failure to file a brief. (See Appellate Docket Sheet for Commonwealth v. Charlton, No. 683 WDA 2009 (Pa. Super.)).[7]

### III. Discussion

#### A. Fourth Amendment Claim

Petitioner contends that his Fourth Amendment rights were violated because the police seized the bloodstained jeans pursuant to an illegal search. This claim is not cognizable in federal habeas. In Stone v. Powell, 428 U.S. 465 (1976), the Supreme Court held that a federal court may not grant a state prisoner habeas corpus relief on a claim that evidence obtained in an unconstitutional search or seizure was introduced at his trial if the State had already provided an "opportunity for full and fair litigation" of the Fourth Amendment claim, explaining:

> [T]he additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant. The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal. Even if one

---

[7] The Court takes judicial notice of this docket sheet. It is available to the public online at <http://ujsportal.pacourts.us/DocketSheets/Appellate.aspx>.

> rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice.
>
> In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 493-494 (footnotes and internal citations omitted). See also Deputy v. Taylor, 19 F.3d 1485, 1490 (3d Cir. 1994) (rejecting a Fourth Amendment claim because the petitioner had had a full and fair opportunity to litigate it in the state court, and noting that under Stone, "[e]ven otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."). It cannot be disputed that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state court. Therefore, this claim is denied.

### B.   Claim Challenging the Jury Array

In his next claim, Petitioner contends that his Sixth Amendment guarantee to an impartial jury was violated because minorities were under-represented in the jury array. As set forth above, Petitioner raised this same claim on direct appeal. The Superior Court held that, because he failed to object to the jury array prior to the second trial as required by Pennsylvania Rule of Criminal Procedure 630, the claim was waived pursuant to Pennsylvania Rule of Appellate Procedure 302(a), which states that: "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." (SCR No. 84, Charlton, No. 476 WDA 2004, slip op. at 17-19).

Because the Superior Court denied Petitioner relief on this claim based upon a state procedural rule of waiver, it is barred from federal habeas review under the "procedural default" doctrine. This doctrine is "grounded in concerns of comity and federalism[.]" Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). It prohibits federal habeas courts from reviewing a

state court decision involving a federal question if the state court decision is based on a rule of state law that is "independent" of the federal question and "adequate" to support the judgment. See, e.g., Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985). Here, the Superior Court's decision was based on the application of a state procedural rule and thus was "independent" of federal law. A state rule is "adequate" if the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule and the state court's refusal was consistent with other decisions. Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007); Beard v. Kindler, — U.S. —, 130 S.Ct. 612 (2009) (discretionary state rules can be "adequate"); see also Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred). The Superior Court's application of Appellate Rule 302(a) was "adequate," since that rule clearly states that issues not raised in the lower court are waived, and since at the time of Petitioner's waiver, Pennsylvania appellate courts regularly held that claims were waived when a defendant failed to raised them before the trial court at the required time (which was, in this case, no later than five days before the first day of the week his second trial was listed for trial, Pa.R.Crim.P. 630(B)). See 20 G. Ronald Darlington *et al.*, Pennsylvania Appellate Practice § 302:1 (2008-09 ed.) (collecting cases and explaining that Pennsylvania courts have applied Appellate Rule 302(a) "consistently" and that "[a]lthough exceptions to the general rule have been permitted, they occur primarily where either important issues of public policy are concerned or where counsel had no opportunity to raise an issue below."). Cf. Clausell v. Sherrer, — F.3d — , 2010 WL 395902 *3 (3d Cir. Feb. 5, 2010) (rejecting a habeas petitioner's substantive Batson claim because he failed to raise an objection at trial to the prosecutor's use of peremptory challenges and therefore he forfeited his right to raise a Batson claim on direct appeal or on collateral review).

A petitioner whose constitutional claim has not been addressed on the merits in state court due to the failure to comply with a state procedural rule can overcome the default, thereby

allowing federal court review, if he can demonstrate "cause" for the default, *i.e.,* that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and actual prejudice.[8]  Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986).  In this case, Petitioner argues that his trial counsels' failure to challenge the composition of the jury array prior to the second trial amounts to sufficient "cause" to overcome his default.  This argument fails for two separate reasons.  First, an attorney's decision not to raise a claim is not the type of conduct that satisfies the "cause" requirement.  As the Third Circuit Court has stated:

> Examples of "cause" that are "external to the defense" include interference by the state with the conduct of a defense or the previous unavailability of the factual or legal basis of a claim.  Generally, "cause" cannot be based on the mere inadvertence of the petitioner or petitioner's counsel to take an appeal.  "*[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default.*" [Murray v. Carrier, 477 U.S. at 486].  Indeed, in Coleman v. Thompson, 501 U.S. 722 [ ] (1991), the Court addressed . . . the effect of a litigant's inadvertent failure to take a timely appeal in a state collateral proceeding.  The Court, applying Murray v. Carrier, concluded that an "ignorant or inadvertent procedural default" does not satisfy the cause element of cause and prejudice.  Coleman, 501 U.S. at 752[.]

Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (emphasis added).

Second, while the Supreme Court has recognized that attorney error that constitutes ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 668 (1984) can constitute "cause" for relief from a procedural default, Coleman, 501 U.S. at 753-54, in the instant case Petitioner may not rely on his trial counsels' alleged ineffective assistance to avoid his default.  Concerned with comity and the prospect of placing federal courts in the anomalous position of adjudicating unexhausted state claims, the Supreme Court requires that "a

---

[8] A federal court may also reach the merits of a procedurally defaulted claim if the petitioner establishes a "fundamental miscarriage of justice" will occur if the default is not excused.  The "fundamental miscarriage of justice" exception applies only in the "extraordinary" case in which the petitioner has presented new evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]"  Schlup v. Delo, 513 U.S. 298, 316, 324 (1995); see also House v. Bell, 547 U.S. 518 (2006); Goldblum v. Klem, 510 F.3d 204, 225 (3d Cir. 2007); Albrecht v. Horn, 485 F.3d 103, 121-27 (3d Cir. 2007); Hubbard v. Pinchak, 378 F.3d 333, 339-41 (3d Cir. 2004).  This is not one of those extraordinary and rare cases in which the fundamental miscarriage of justice exception is implicated.

claim of ineffective assistance of counsel [must] be presented to the state courts as an independent claim before it may be used to establish procedural default." Murray, 477 U.S. at 488-89. This Petitioner failed to do, as he has never exhausted properly a claim that his trial attorneys were ineffective for failing to challenge the jury array prior to the second trial.

Thus, based upon all of the foregoing, Petitioner's claim challenging the composition of the jury array is procedurally defaulted.

### C.   Weight Of the Evidence

In his final claim, Petitioner contends that the jury's verdict was against the weight of the evidence. It is not cognizable in federal habeas because it raises solely an issue of state law. Tibbs v. Florida, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); see also Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]"). In conducting habeas review for a state prisoner such as Petitioner, this Court is limited to deciding whether his state conviction violated the Constitution of the United States, 28 U.S.C. § 2254(a), and may not rule on issues of purely state-law error. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal courts may not "reexamine state court determination on state-law questions").

It may be that Petitioner is seeking to raise the claim that there was *insufficient* evidence to support the jury's verdict. Unlike a challenge to the *weight* of the evidence, a challenge to the sufficiency of the evidence does express a federal constitutional claim. See Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009) (quoting Jackson v. Virginia, 443 U.S. 307, 321 (1979) ("it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim" and that "it follows that such a claim is cognizable in a federal habeas corpus proceeding."); and citing Fiore v. White, 531 U.S. 225, 228-29 (2001) (per curiam) ("We have held that the Due Process Clause of the Fourteenth

Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt.")).

If, in fact, Petitioner is raising a claim challenging the sufficiency of the evidence, that claim is denied as procedurally defaulted because he failed to exhaust it properly in the state court. In order to exhaust a claim properly, a petitioner must "fairly present" it to *each level of the state courts*. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, — U.S. — ,130 S.Ct. 612 (2009)). For state prisoners convicted in the Commonwealth of Pennsylvania, this requirement typically means that a petitioner in a non-capital case must present every claim raised in his federal petition to both the Common Pleas Court and the Superior Court either on direct appeal or during PCRA proceedings. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). The failure to fully exhaust federal claims in state court bars the consideration of those claims in federal court by means of habeas corpus because they have been procedurally defaulted. Cristin, 281 F.3d at 410 (citing Coleman, 501 U.S. at 731; Wainwright v. Sykes, 433 U.S. 72, 90 (1977)); see also Whitney v. Horn, 280 F.3d 240, 251-52 (3d Cir. 2002) (the procedural default doctrine applies to bar federal habeas relief when a state court has declined or would decline to address a petitioner's federal constitutional claims because he failed to meet a state procedural requirement); Lines, 208 F.3d at 160-65.

As set forth above, Petitioner raised a sufficiency of the evidence claim in his post-trial motion and in his Rule 1925(b) Statement, but he failed to "fairly present" the claim in the brief he filed with the Superior Court, see *Brief For Appellant*, No. 476 WDA 2004 (Pa. Super. Sept. 8, 2004), as required by Rules 2111 and 2116 of the Pennsylvania Rules of Appellate Procedure. As a result, the Superior Court did not address it. Because Petitioner did not exhaust properly the insufficiency of the evidence claim before the state courts, it is procedurally defaulted and this Court may not review it on the merits.

However, even if the claim were not procedurally defaulted, this Court would still deny it. The trial court adjudicated it on the merits in the Rule 1925(b) Opinion. Accordingly, that

-14-

adjudication is entitled to deference under the standard of review set forth at 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It provides, in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or,
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert, 387 F.3d at 234.

The "clearly established Federal law" in which to analyze the sufficiency of the evidence claim is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In a habeas corpus proceeding, where the sufficiency of the evidence is in contention:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction .... does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir. 1997) (quoting Jackson v. Virginia, 443 U.S. at 318-19) (internal citations and quotes omitted). See also Robertson, 580 F.3d at 165; Orban v. Vaughn, 123 F.3d 727, 731-33 (3d Cir. 1997).

In adjudicating this claim, the trial court applied the Pennsylvania equivalent of the Jackson v. Virginia standard. (SCR No. 80, Rule 1925(b) Opinion at 5-6 (citing Commonwealth v. Tau Kappa Epsilon, 609 A.2d 791, 793 (Pa. 1992); Commonwealth v. Jackson, 485 A.2d 1102 (Pa. 1984)). See also Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233

(3d Cir. 1992) (the test for insufficiency of the evidence is the same under both Pennsylvania and federal law). It set forth an extensive review of the evidence offered at trial to explain why a rational finder of fact could have found beyond a reasonable doubt each of the elements of first-degree murder. (Id. at 6-16). The trial court explained that a rational finder of fact could have found the first and second elements (the specific intent to kill and that Bain was unlawfully killed) from the extensive evidence establishing the gruesome and violent nature of Bain's death. It then explained that a rational trier of fact could have found beyond a reasonable doubt the third element, that Petitioner did the killing, through the DNA evidence and Pencille's testimony. (Id.) The trial court's adjudication withstands AEDPA's standards of review, and it cannot be concluded that the Commonwealth did not submit sufficient evidence to support its verdict under the standards presented by Jackson v. Virginia.

    **D.**    **Certificate of Appealability**

28 U.S.C. § 2253 governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Applying this standard here, jurists of reason would not find it debatable whether the claim raised in the Petition For a Writ Of Habeas Corpus are without merit. Accordingly, a certificate of appealability should be denied.

**IV.    CONCLUSION**

      For the foregoing reasons, the Petition For a Writ Of Habeas Corpus is denied and a certificate of appealability is denied.  An appropriate Order follows.


                                        /s/ Susan Paradise Baxter
                                        SUSAN PARADISE BAXTER
                                        United States Magistrate Judge

Dated:  February 25, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES CHRISTOPHER CHARLTON, )<br>   Petitioner, ) | Civil Action No. 07-200 Erie |
|    v. ) | Magistrate Judge Baxter |
| DAVID WAKEFIELD, <u>et</u> <u>al.</u>, )<br>   Respondents. ) | |

## **ORDER**

  AND NOW, this 25day of February, 2010;

  IT IS HEREBY ORDERED that the Petition For a Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 [Document No. 7] is denied and a certificate of appealability is denied. The Clerk of Courts is directed to close this case.

              /s/ Susan Paradise Baxter
              SUSAN PARADISE BAXTER
              United States Magistrate Judge